# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| INTERNATIONAL FIDELITY INS. CO. § | |
| § | |
| V. § | A-17-CV-973-LY |
| § | |
| BEP AMERICA, INC., et al. § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Transfer Venue and Brief in Support (Dkt. No. 22); Plaintiff's Response (Dkt. No. 24); and Defendant's Reply (Dkt. No. 27). The district judge referred the motion to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72 and Rule 1(d) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Restaurants Acquisition I, LLC ("RAI"), a Delaware limited liability corporation, operated a chain of full-service restaurants throughout Texas under the tradenames Black-eyed Pea and Dixie House. The sole managing member of RAI is BEP 1&2, LLC, also a Delaware company, which in turn is wholly owned by BEP America, Inc., a Texas corporation. BEP America is owned equally by Bob Langford and W. Craig Barber. After RAI experienced serious financial difficulties it fell behind on its payments to various taxing authorities, including the State of Texas. In October 2013, the Texas Comptroller of Public Accounts recorded a Texas state tax lien against RAI in the amount of $966,348.19. After conducting several sales and use tax audits of RAI, the Comptroller determined that RAI owed the State $4,125,162.65 in back taxes. RAI disputed the methodology of the audits and made no payments to the Comptroller. On December 2, 2015, RAI filed a

bankruptcy proceeding under Chapter 11 of the Bankruptcy Code, which was later converted to a Chapter 7 proceeding. *In re Restaurants Acquisition I, LLC*, No. 15-12406 (KG) (Bankr. D. Del.) ("Bankruptcy Case"). As of December 2, 2015, RAI had filed returns but not remitted sales taxes for the months of September and October 2015. On February 12, 2016, the Comptroller filed a lawsuit in Travis County, Texas against Barber and Langford in their individual capacities to recover the back taxes.

Thereafter, RAI, Barber and Langford entered into a Settlement Agreement with the Comptroller in the bankruptcy court, in which the Comptroller agreed to dismiss the state court action in exchange for RAI agreeing to pay it a total of $431,195.48 in installments beginning on April 4, 2016. The Settlement Agreement included a "Retention of Jurisdiction" clause which provided that the United States Bankruptcy Court for the District of Delaware would retain jurisdiction to hear any disputes "regarding this Agreement."

Approximately one year before entering into the Settlement Agreement, on February 10, 2015, RAI and BEP America applied for a "Surety Bond for Texas Limited Sales, Excise, and Use Tax" with International Fidelity Insurance Company. Fidelity issued the sales tax bond which named the Comptroller as the obligee. The signed bond application contained an indemnity agreement in which RAI and BEP America agreed to pay Fidelity upon execution of the Bond and to indemnify Fidelity for "all demands, losses, costs, damages, and expenses. . .which [Fidelity] may sustain or incur by reason of the issuance of such Bond(s)." Dkt. No. 1-1. RAI and BEP America also agreed to reimburse Fidelity "for all expenses, counsel and attorney's fees incurred by [Fidelity] in enforcing any provision of the Agreement. *Id.*

After RAI failed to pay the Comptroller as required under the Settlement Agreement, the Comptroller made a claim on the Fidelity bond. Fidelity then paid the Comptroller $100,000 as

2

required by its bond. Fidelity then demanded that RAI and BEP America indemnify it for its losses, but they have failed to do so. Fidelity contends that because of its payment to the Comptroller, it is subrogated to the rights and remedies of the Comptroller. On October 12, 2017, Fidelity filed this breach of contract lawsuit against BEP America, BEP 1&2, Barber and Langford ("Defendants") alleging that BEP America and BEP 1&2 breached the Indemnity Agreement. Fidelity also alleges that Barber and Langford breached their fiduciary duties and failed to remit state sales taxes under Section 111.016 of the Texas Tax Code.

On January 12, 2018, the Defendants filed the instant Motion to Transfer Venue under 28 U.S.C. § 1404(a) arguing that this case should be transferred to the United States Bankruptcy Court for the District of Delaware because of the retention of jurisdiction clause contained in the Settlement Agreement. Fidelity disagrees and argues that the retention of jurisdiction clause does not apply to this lawsuit because its claims arise out of the separate Indemnity Agreement and this is not a suit to enforce the Settlement Agreement.

## II. STANDARD OF REVIEW

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have broad discretion in deciding whether to order a transfer" under § 1404(a). *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 313–15 (5th Cir. 2008) (internal quotation marks omitted), *cert.*

*denied*, 555 U.S. 1172 (2009). It is well settled that the party seeking the transfer of venue bears the burden of demonstrating that the case should be transferred. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966). *See also, Volkswagen II*, 545 F.3d at 315; *Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 2005 WL 827076, at *2 (N.D. Tex. Apr. 6, 2005).

The starting point on a motion for transfer of venue is determining whether the suit could have originally been filed in the destination venue. *Id.* at 312. If it could have, the focus shifts to whether the party requesting the transfer has demonstrated the "convenience of parties and witnesses" requires transfer of the action, considering various private and public interests. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*. Although the *Gilbert* factors are "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." In fact, the Fifth Circuit has noted "none . . . can be said to be of dispositive weight." *Volkswagen II*, 545 F.3d at 313–15 (internal quotations omitted). Despite the wide array of private and public concerns, a court must engage in a "flexible and individualized analysis" in ruling on a motion to transfer venue. *Stewart*, 487 U.S. at 29.

Lastly, it is important to note that the plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 313 & 314 n.10 "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *Id.* "[W]hen a plaintiff is not a resident of the chosen forum, or the operative facts underlying the case did not occur in the chosen forum, the court will not give as much deference to a plaintiff's choice." *Apparel Prod. Servs. Inc. v. Transportes De Carga Fema, S.A.*, 546 F. Supp.2d 451, 453 (S.D. Tex. 2008).

### III. ANALYSIS

As discussed above, on April 19, 2016, RAI, Barber and Langford (collectively "RAI") entered into a Settlement Agreement with the Comptroller in which the Comptroller agreed to dismiss the state court action in exchange for RAI's agreement to pay it a total of $431,195.48, in installments beginning on April 4, 2016. Dkt. No. 22-1 at 4-20.[1] The Settlement Agreement contained a "Retention of Jurisdiction" clause, but it only provided that the "Bankruptcy Court shall retain jurisdiction to hear any disputes among the Parties *regarding this Agreement*." *Id.* at ¶ 22 (emphasis added). The Order also stated that the Bankruptcy Court "retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of *this Order*." *Id.* (emphasis added). Defendants argue that the Retention of Jurisdiction clause in the Settlement Agreement applies to this case and, therefore, the Court should transfer the case under 28 U.S.C. § 1404(a) to the Bankruptcy Court for the District of Delaware. Defendants are mistaken.

---

[1]On May 10, 2016, the United States Bankruptcy Court for the District of Delaware issued an order approving and authorizing the Settlement Agreement. Exh. 2 to Dkt. No. 22.

Bankruptcy courts—like all federal courts—may retain jurisdiction to interpret and enforce their prior orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). However, a bankruptcy court may not "retain" jurisdiction it never had—*i.e.*, over matters that do not fall within 28 U.S.C. § 1334's statutory grant. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). A retention of jurisdiction provision may not alter the fact that "the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157." *U.S. Brass Corp. v. Travelers, Ins. Group*, 301 F.3d 296, 303 (5th Cir. 2002). Thus, "neither the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction otherwise is lacking. . . ." *Valley Historic Ltd. P'ship. v. Bank of N.Y.*, 486 F.3d 831, 837 (4th Cir. 2007).

The Retention of Jurisdiction clause only applies to "disputes among the Parties regarding the Settlement Agreement." This lawsuit is not a suit to enforce the Settlement Agreement and its claims do not arise out of the Settlement Agreement. *See Special Value Continuation Partners, L.P. v. Jones*, 2011 WL 5593058, at *3 (Bankr. S.D. Tex. Nov. 10, 2011) (holding that bankruptcy court's retention of jurisdiction clause did not apply to state court lawsuit where defendants failed to show that the state court lawsuit arises from or relates to the implementation of the bankruptcy court's order). Rather, Fidelity's claims in this lawsuit arise out of the Indemnity Agreement in which Defendants agreed to pay Fidelity after issuing the bond and to indemnify Fidelity for "all demands, losses, costs, damages, and expenses . . . which [Fidelity] may sustain or incur by reason of the issuance of such Bond(s)." Dkt. No. 1-1. To put it differently, Fidelity's claim is that by failing to

6

pay and indemnify Fidelity, Defendants have breached the Indemnity Agreement. This is not a dispute regarding the Settlement Agreement.

In addition, the Settlement Agreement provides that in the event of a default by RAI, the Comptroller could:

> (a) recover the outstanding balance of the Allowed Trust Fund Tax Claim, plus any and all penalties and additional statutory interest that may have accrued, against C. Barber and R. Langford jointly and severally; (b) exercise any and all rights and remedies *under applicable nonbankruptcy law*; or (c) seek such relief as may be appropriate in the Bankruptcy Court.

Dkt. No. 21-1 at ¶ 4 (emphasis added). Because RAI failed to pay the Comptroller in full as required by the Settlement Agreement, under the Agreement the Comptroller—and now Fidelity—may exercise "any and all rights and remedies under applicable nonbankruptcy law." Nothing in the Settlement Agreement precludes Fidelity from filing this lawsuit in the Western District of Texas.

Finally, Defendants completely fail to address any of the venue factors under 28 U.S.C. § 1404(a). As already noted, the moving party bears the burden of showing by a preponderance of the evidence that transfer is appropriate. *Volkswagen II*, 545 F.3d at 315; *Wolf Designs*, 2005 WL 827076, at *2.[2] Defendants have failed to sustain their burden to demonstrate that this case should be transferred under § 1404(a). *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010) (defendant failed to demonstrate good cause for transfer where defendant failed to address all of the factors under § 1404(a)); *Holmes v. Energy Catering Servs., LLC*, 270 F. Supp. 2d 882, 887 (S.D. Tex. 2003) (same).

---

[2]Because the retention of jurisdiction clause is not applicable in this lawsuit, the Court need not alter the analysis under § 1404(a) as is required in a case involving a mandatory forum selection clause. *See Atlantic Marine Construction Co. v. United States Dist. Ct. for W. Dist. of Texas*, 134 S.Ct. 568 (2013). Accordingly, Defendants have relied on the wrong standard of review.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendants' Motion to Transfer Venue (Dkt. No. 22).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 29th day of May, 2018.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE